UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE ESTATE OF TROY BOWSER, et. al., | Civ. No. 18-5606 (RBK) (JS) |
| Plaintiffs, | |
| v. | **OPINION** |
| ATLANTIC COUNTY, et al., | |
| Defendants. | |

**ROBERT B. KUGLER, U.S.D.J.**

This matter comes before the Court by way of Plaintiffs, the Estate of Troy S. Bowser, by and through its *Administrator Ad Prosequendum*, Sandra D. Trettner, and Ms. Trettner, in her own right's (hereinafter referred to in the singular) Complaint under 42 U.S.C. § 1983. Presently before the Court is Defendant CFG Health Systems, LLC's ("CFG") motion for partial summary judgment (ECF No. 17). For the reasons set forth below, the Court will GRANT IN PART, CFG's motion.

### I. BACKGROUND

At all times relevant to the allegations in the Complaint, Decedent Troy S. Bowser was a pre-trial detainee at the Atlantic County Correctional Facility. On April 13, 2016, jail staff discovered Mr. Bowser hanging in his cell from a bedsheet tied to an overhead sprinkler. (ECF No. 1, at ¶ 45). Following that discovery, staff took Mr. Bowser to Atlanticare Regional Medical Center, where he remained until his death on April 19, 2016. (*Id*. at ¶ 46). Officials determined that Mr. Bowser's cause of death was suicide by hanging. (*Id*.). As this motion only contests the actions of CFG and its employees, the Court will only articulate those facts necessary to address the issues therein.

The Complaint alleges that the actions of CFG's agents or employees, among others, caused Mr. Bowser's death, but does not identify those employees or how they were negligent with particularized facts. More specifically, CFG's employees knew or should have known about Mr. Bowser's heroin and alcohol withdrawal symptoms and should not have transferred him out of suicide watch "until Mr. Bowser was no longer an imminent suicide risk or they were to arrange for his transfer to a mental healthcare facility." (ECF No. 1, at ¶ 31). Further, in failing to properly evaluate Mr. Bowser for transfer, those employees also failed to dispense proper medical and mental health care, or otherwise take any measures to keep Mr. Bowser free from harm. (*Id.* at ¶ 47). Plaintiff also contends more generally, that CFG failed to maintain or enforce effective policies for potentially suicidal inmates. (*Id.* at ¶ 74).

Plaintiff filed her Complaint on April 5, 2018, alleging three counts relevant to this motion: wrongful death (Count V); a survival action (Count VI); and negligence (Count VII). CFG filed its Answer on April 24, 2018. Within the sixty days that followed, Plaintiff submitted an Affidavit of Merit (AOM) from Lawrence J. Guzzardi, MD, on April 30, 2018, and within 120 days of CFG's Answer, Plaintiff submitted an AOM from Dale Panzer, MD, on August 22, 2018.

As to Dr. Guzzardi, his AOM states that he is a licensed physician in the Commonwealth of Pennsylvania who is currently board certified in medical toxicology. (ECF No. 17-5, at 2). In the last five years he has limited his practice to testifying to the standards of care in correctional medicine and in matters related to emergency medicine, medical toxicology, correctional care, and substance abuse. (*Id.*). The AOM states that he has expertise in problems involving drug withdrawal and in the evaluation of potentially suicidal inmates. (*Id.*). Dr. Guzzardi avers that there is a reasonable probability that the care, skill, or knowledge exercised or exhibited by CFG

2

through its employees or agents while "Mr. Bowser was at the Atlantic County Jail lead to [Mr. Bowser's] death on or about April 13[sic], 2016." (*Id*. at 2–3). As with the Complaint, this AOM does not allege any particularized acts of professional negligence and does not identify the negligent employees at issue.

As to Dr. Panzer, his AOM states that he is a licensed physician in the Commonwealth of Pennsylvania who is currently board certified in psychiatry, with extensive expertise in assessing patient safety and making appropriate recommendations for patient care. (ECF No. 17-5, at 5). Further, Dr. Panzer has continuously practiced psychiatry for over twenty years, which has required him to regularly assess patient safety and make appropriate treatment and clinical care recommendations. Dr. Panzer avers that there is a reasonable probability that CFG's employees provided unreasonable psychiatric and psychological care that lead to Mr. Bowser's "death on or about April 13 [sic], 2016." (*Id*. at 6). As with the Complaint, this AOM does not allege any particularized acts of professional negligence and does not identify the negligent employees at issue.

CFG's Answer, in its "Fifteenth Separate Defense," lists the relevant employees in this action, which include a variety of nurses, medical technicians, and a psychologist, and asserts that Plaintiff has failed to file an appropriate AOM for these individuals. (ECF No. 10, at 3–4).

## II.     JURISDICTION

This case is before the Court in its federal-question jurisdiction, as Plaintiff has brought this suit under 42 U.S.C. § 1983. *See* 18 U.S.C. § 1331. The tort claims that are the focus of this motion are before the Court in its supplementary jurisdiction pursuant to 18 U.S.C. § 1367.

3

### III. STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton,* 572 U.S. at 657. The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist). The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson,* 477 U.S. at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.,* 470 F.3d 535, 538 (3d Cir. 2006).

A failure to file an appropriate AOM is properly the subject of a motion for summary judgment under Rule 56 because the Court must necessarily consider "matters outside the pleadings" when considering the applicability of the AOM Statute. *Nuveen Mun. Trust v. WithumSmith Brown, P.C.*, 692 F.3d 283, 303 n.13 (3d Cir. 2012).

## IV. DISCUSSION

CFG argues that partial summary judgment is appropriate here as to Plaintiff's medical and professional negligence claims because Plaintiff has failed to file appropriate affidavits of merit. N.J.S.A. § 2A:53A-27. The parties do not dispute that the CFG employees involved in this matter are nurses[1] and a psychologist, and CFG does not contest the affidavits on timeliness grounds.[2] Plaintiff appears to have partially premised her claims against CFG on a theory of *respondeat superior* or vicarious liability, against CFG for the actions of its employees, as well as for negligent supervision.

Under either theory, the statute requires an AOM in such cases because the "plaintiff's claim of . . . liability hinges upon allegations of deviation from professional standards of care by licensed individuals who worked for the named defendant." *McCormick v. State*, 144 A.3d 1260, 1267 (N.J. Super. Ct. App. Div. 2016); *see, e.g., Estate of Moore*[3] *v. Cumberland Cty.*, No. 17-

---

[1] CFG's Answer lists a number of medical technicians that may have been involved in Mr. Bowser's care. It is unclear, however, whether medical technicians qualify as nurses or are otherwise "licensed persons" under the AOM statute, and the parties have not addressed the issue in their briefs. N.J. Stat. Ann. § 2A:53A-26. Accordingly, the Court makes no determination as to whether Plaintiff can maintain vicarious liability claims against CFG for the actions of its medical technicians.

[2] Plaintiff devotes a substantial portion of her brief arguing that the affidavits in this case were timely, but CFG concedes that Plaintiff served the affidavits in a timely manner. (ECF No. 17-9, at 17 ("even though timely served")).

[3] Hereinafter referred to as "*Moore 2*."

2839, 2018 WL 3455478, at *3 (D.N.J. July 18, 2018); *Tentoni v. Jeffers*, No. 08-1976, 2010 WL 4810758, at *4 (D.N.J. Nov. 19, 2010); *Johnson v. Handler*, No. A-3862-13T3, 2015 WL 10677203, at *6 (N.J. Super. Ct. App. Div. Apr. 15, 2016) (finding that an "AOM must be submitted addressing an institution's agents who are not sued but whose alleged negligence forms the basis of the action against the institution").

Section 26 of the AOM Statute enumerates various "licensed persons," including, as relevant here, registered professional nurses. N.J. Stat. Ann. § 2A:53A–26. To satisfy the statute, a plaintiff bringing a professional malpractice or negligence claim must:

> provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.
>
> In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in section [N.J. Stat. Ann. § 2A:53A–41 ("section 41") ]. In all other cases, the person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years.

N.J. Stat. Ann. § 2A:53A–27. If a plaintiff fails to provide such an affidavit "it shall be deemed a failure to state a cause of action." N.J. Stat. Ann. § 2A:53A-29; *Moore 2*, 2018 WL 3455478 at *4.

As an initial matter, the Court will deny CFG's motion to the extent that it seeks to enforce the AOM Statute to any claim arising from the actions of a psychologist. (ECF No. 17-9, at 17). The AOM Statute does not include psychologists within its list of "licensed persons" and in turn, does not require an AOM for suits against such professionals or claims arising from their actions. *See, e.g.*, N.J. Stat. Ann. § 2A:53A–26; *Estate of Dasaro by & through Dasaro v. Cty. of*

6

*Monmouth*, No. 14-07773, 2018 WL 1003269, at *4 (D.N.J. Feb. 21, 2018) (citing *Endl v. New Jersey*, No. 12-3564, 2016 WL 1224133 at *16 (D.N.J. Mar. 29, 2016)).

Turning then, to whether Plaintiff has filed an appropriate AOM with regard to the various nurses in this case, the Court observes that it recently decided this issue in an unrelated jail suicide case that involved CFG, Dr. Guzzardi, a nearly identical AOM, and the same counsel for Plaintiff and CFG. *Moore 2*, 2018 WL 3455478. In *Moore*, this Court initially found that Dr. Guzzardi was not qualified to provide an AOM in that case:

> the Court rejects Defendant's argument that the mere fact that Dr. Guzzardi is not a registered nurse categorically prevents him from providing an AOM in any case involving a nurse. Such a formalistic argument holds, at essence, that a license imputes knowledge, instead of the other way around—reasoning that *Meehan* appears to have rejected. *Cf. Ferreira v. Rancocas Orthopedic Assocs.*, . . . 836 A.2d 779, 784–85 ([N.J.]2003) ("The [AOM] statute was not intended to encourage gamesmanship or a slavish adherence to form over substance."). But even so, we agree that Dr. Guzzardi is not qualified as an affiant because he is not an "appropriate licensed person," *i.e.*, he is not someone who "has particular expertise in the general area involved in the action or in the specialty involved in the action." [*Meehan v. Antonellis*, 141 A.3d 1162, 1175 (N.J. 2016).] A medical toxicologist does not have any obvious, let alone particular, expertise in evaluating the conduct of nurses during the intake-screening process of a correctional facility
> 
> . . .
> 
> Dr. Guzzardi's experience in medical toxicology appears to be, by his own admission in the AOM, solely confined to expert testimony over the last five years, further undermining the relevance of his expertise to this action. Most problematic, though, is that Plaintiffs' AOM does not even address who Dr. Guzzardi purports to review. It merely recites the language of the statute and provides little else on which to establish a reasonable probability that the care, skill, or knowledge exercised by CFG or its "employees, agents, and/or workman [sic]" was deficient. The New Jersey Supreme Court has cautioned against such blanket statements, noting that "[i]f a plaintiff were permitted to name fifteen defendants and provide each with an affidavit specifying only that a claim against one defendant is meritorious, the statutory purpose of reducing frivolous lawsuits

7

would be subverted or circumvented." *Fink v. Thompson*, [772 A.2d 386, 392 (N.J. 2001)]. As such, we find that Plaintiffs have not complied with the AOM Statute.

*Estate of Moore[4] v. Cumberland Cty.*, No. 17-2839, 2018 WL 2095593, at *4 (D.N.J. May 7, 2018), *reconsideration denied*, *Moore 2*, 2018 WL 3455478.

The *Moore* plaintiffs then filed a motion for reconsideration, in which they added, among other things, a supplemental certification from Dr. Guzzardi. The supplemental certification set forth Dr. Guzzardi's relevant experience and knowledge about prisons, intake-screening processes, the evaluation of suicidal inmates, and inmates suffering from drug withdrawal. *Moore 2*, 2018 WL 3455478, at *2.

This Court concluded that while Dr. Guzzardi's initial AOM alone was insufficient, the supplemental certification provided enough information "to recognize Dr. Guzzardi as an 'appropriate licensed person' in the 'general area or specialty involved in the action' to complete an AOM" in that case *generally*.[5] *Moore 2*, 2018 WL 3455478, at *2. Nevertheless, the Court found that the AOM was deficient because it failed to specify *whose* negligence Dr. Guzzardi was purporting to review. *Id.*; *Johnson*, 2015 WL 10677203, at *6 (concluding that in vicarious liability claims against healthcare facilities an AOM must specifically identify whose negligence the affiant purported to review, and that merely referring to the hospital's "physicians and other health care providers" was insufficient).

---

[4] Hereinafter referred to as "*Moore 1*."

[5] As discussed below, although Dr. Guzzardi does not qualify as an affiant for vicarious liability claims arising from CFG's nurses, Dr. Guzzardi could theoretically qualify as an affiant against CFG itself, as a "licensed person" under the AOM Statute, for claims that do not arise from different standards of care.

8

In the present case, however, Plaintiff *did not* include any such certification along with Dr. Guzzardi's AOM or in her opposition, nor did Plaintiff request the Court to take judicial notice thereof, or otherwise mention the document—or *Moore*—in her papers. (ECF No. 19). Although it is the duty of the Court to construe disputed facts in Plaintiff's favor in this context, it is not the duty of the Court to advocate on behalf of Plaintiff. *See, e.g.*, *United States v. Lavanture*, 74 F. App'x 221, 225 (3d Cir. 2003) (holding that the court "must not abandon [its] proper role and assume that of an advocate") (citations omitted); *United States v. Wilensky*, 757 F.2d 594, 597 (3d Cir. 1985) (same).

Accordingly, the Court will not take judicial notice of Dr. Guzzardi's supplemental certification[6] in *Moore 2* and again conclude that his AOM, alone, is insufficient to demonstrate that he is an "appropriate licensed person," that "has particular expertise in the general area involved in th[is] action or in the specialty involved in the action." *Moore 1*, 2018 WL 2095593, at *4 (quoting *Meehan*, 141 A.3d at 1175).

---

[6] As mentioned above, had Plaintiff's counsel submitted the same supplemental certification, the Court would have found Dr. Guzzard's AOM insufficient for the reasons set forth in *Moore 2*:

> the AOM does not identify anyone save for the employer. That is insufficient: the affiant must have some way of knowing whether the claim was meritorious or if he or she was even qualified to opine on the alleged professional negligence. How, indeed, could [a doctor] certify that a claim of professional negligence is meritorious if he does not even know the professions involved? The affiant needs to state whose professional negligence is at the heart of the lawsuit. That [did not] happen here.

*Moore 2*, 2018 WL 3455478, at *3. *But see Estate of Conroy v. Cumberland Cty.*, No. 17-7183, 2018 WL 4522043, at *7 (D.N.J. Sept. 21, 2018) (taking judicial notice of the supplemental certification in *Moore 2* and concluding that the AOM was sufficient against CFG in a similar case), *reconsideration denied*, 2019 WL 366552 (D.N.J. Jan. 29, 2019).

9

Turning then to Dr. Panzer's AOM, CFG similarly argues that Dr. Panzer cannot offer an opinion as to the relevant standard of care because he is not qualified to opine on the standards of care for nurses or psychologists. Like Dr. Guzzardi's AOM, Dr. Panzer's AOM fails to state whose professional negligence he purported to review, nor does Plaintiff answer that question in her brief. (ECF No. 19, at 8). That information is particularly relevant, as it is entirely possible that Dr. Panzer referred only to the actions of the psychologist involved in this case, but for whom an AOM was unnecessary. In light of that failure, the Court similarly finds that Dr. Panzer's AOM is deficient because it fails to identify whose conduct "fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A–27; *Johnson*, 2015 WL 10677203, at *6.

Moreover, had Dr. Guzardi and Dr. Panzer identified whose negligence they purported to review, it appears that the AOMs would have been deficient for another reason. If Plaintiff truly seeks to hold CFG vicariously liable primarily for the failures of their nurses to adhere to a standard of care, and not the failure of any physicians, then neither doctor is qualified to serve as an affiant against those nurses.

As the New Jersey Superior Court, Appellate Division, has explained, "it would be contrary to the text and purposes of the AOM statute to allow a licensed nurse to serve as a qualified affiant against a licensed physician who, for example, negligently took and recorded a patient's blood pressure." *Hill Int'l, Inc. v. Atl. City Bd. of Educ.*, 106 A.3d 487, 502 (N.J. Super. Ct. App. Div. 2014). Although both professions are "trained and authorized to take blood pressure readings, they are each still held professionally accountable under the standards of care of their own individual professions." *Id*. Consequently, it "would thwart the screening objectives of the AOM

statute to allow a nurse to vouch for a medical malpractice claim asserted against a physician, *and vice-versa.*" *Id*. (emphasis added).

Plaintiff's only responsive argument with any citations, relies on *Borough of Berlin v. Remington & Vernick Engineers*, 767 A.2d 1030, 1031 (N.J. Super. Ct. App. Div. 2001). In that case, the Appellate Division held that a hydrogeologist affiant was appropriately licensed to submit an AOM against an engineering firm, despite the fact that the hydrogeologist was not a licensed engineer. *Id*. The exception in *Berlin*, however, only applies "if the plaintiff's claims are strictly confined to theories of vicarious liability or agency *that do not implicate the standards of care of the defendant's profession.*" *Hill*, 106 A.3d at 505 (emphasis added).

In the present case, Plaintiff explicitly characterizes her claims in Counts Five, Six, and Seven, at least in part, as arising from the failure of CFG's employees "to use the recommended and accepted standard of care." (ECF No. 1, at ¶¶ 77, 83, 90). Accordingly, the Court rejects Plaintiff's reliance on *Berlin*, at least to the extent that Plaintiff's claims implicate the standard of care for nurses.

"The penalty for not following the AOM Statute is severe. Absent a showing of one of four limited exceptions, the failure to file the affidavit 'shall be deemed a failure to state a cause of action.'" *Nuveen*, 692 F.3d at 290–91 (quoting N.J. Stat. Ann. § 2A:53A–29). The four limited exceptions are: (1) where the defendant has failed to provide the plaintiff requested medical information, N.J. Stat. Ann. § 2A:53A–28; (2) a narrow class of cases where professional negligence can be demonstrated as a matter of "common knowledge," *Hubbard v. Reed*, 774 A.2d 495, 501 (N.J. 2001) (finding that a layperson could find professional negligence absent AOM where dentist pulled the wrong tooth); (3) where the plaintiff has substantially complied with the affidavit-of-merit requirement, *Cornblatt v. Barow*, 708 A.2d 401, 411–12 (N.J. 1998); or (4)

11

where the plaintiff can show "extraordinary circumstances" that warrant equitable relief, *Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 782–83 (N.J. 2003). *See also Nuveen*, 692 F.3d at 291 n.3. Plaintiff has not sought to invoke any of these exceptions.

Accordingly, as Plaintiff has failed to satisfy the AOM Statute as to certain claims, the Court will grant in part CFG's motion, and dismiss with prejudice Counts Five, Six, and Seven, to the extent that they seek to hold CFG liable for the actions of its *nurses* under a theory of vicarious liability or negligent supervision. The Court reiterates that this dismissal shall not affect those counts to the extent that they may arise from the actions of CFG's medical technicians or the psychologist at issue, or to the extent that they arise from CFG's alleged "failure . . . to have effective policies in place to ensure that the inmates at the Atlantic County Jail [were] properly evaluated, treated and monitored for suicidal tendencies."[7]

## V.     CONCLUSION

For the foregoing reasons, the Court will GRANT IN PART CFG's motion for partial summary judgment. The Court will enter summary judgment in favor of CFG as to Counts Five, Six, and Seven, to the extent that Plaintiff seeks to hold CFG liable for the actions of its nurses under a theory of vicarious liability or negligent supervision. An appropriate order follows.

Dated: March  19, 2019

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

---

[7] Although Plaintiff raises this argument in her opposition, CFG has not moved for summary judgment on the ground that it, itself, is a "licensed person" under the AOM statute and that Plaintiff failed to file an AOM against CFG, as it has in other cases. (*Compare* ECF No. 19, at 7-8, with ECF No. 17); *see Richards v. Wong*, No. 14-3353, 2015 WL 4742344, at *5 (D.N.J. Aug. 10, 2015).